We'll hear argument first this morning in Case 10-1542, Holder v. Gutierrez and the consolidated case. Ms. Kruger. Ms. Kruger. Mr. Chief Justice, and may it please the Court. Under Section 1229b of Title VIII, an alien who has not been a lawful permanent resident for at least five years or who has not continuously resided in the United States for at least seven years following admission in any status is not eligible for cancellation and removal under the first prong of the statute. That is true regardless of whether the alien can show that his parents or any other third party, for that matter, did satisfy those requirements. The Ninth Circuit, alone among the courts of appeals, has recognized a rule of imputed eligibility under Section 1229bA. That rule is wrong for at least two reasons. First of all, it is inconsistent with the plain text of the statute. The touchstones of eligibility under Section 1229bA, LPR status, admission, and residence, are all terms that are defined in the INA to refer to attributes that are individual to the alien seeking relief, attributes that cannot be satisfied by a third party. But even if the statute were thought to be ambiguous with respect to this question, the Board of Immigration Appeals has interpreted the statute to mean that the alien That interpretation is, at the very least, a reasonable reading of the statute, if not the only reasonable reading of the statute. Sotomayor, did it make that determination as a legal matter or as an exercise of its discretion? As I read its opinion, it felt that it had to come to that conclusion as a matter of law. If we were to find the statute ambiguous, where has it explained the fact that the statute has explained its policy decisions independent of its legal conclusions? First of all, Justice Sotomayor, we don't think the statute is ambiguous, and so we don't think there's any reason to go to Chevron Step 2 in this case. But if you look at the Board's decision in the ESCOBAR in particular, I think the Board makes clear that although it thought the statutory language was clear, it also rested its decision on other considerations that are uniquely within the Board's expertise. It discussed how the imputation rule comports with the general policies of the statute, how it comports with the rule that the Board itself has recognized over time, that LPR status is something that is individual to a particular alien, and that the alien seeking relief has to individually, both procedurally and substantively, satisfy the eligibility requirements. And it also noted that the imputation rule would create significant holes in the statutory scheme. It would mean that an individual who may not even have been eligible for admission to the United States or lawful admission for permanent residence would nevertheless receive a significant benefit that goes along with that status. Roberts You say that you think the statute is unambiguous, but it doesn't address issues of imputation at all, does it? It does not address issues of imputation. It doesn't even address it. It seems to me the best you can say is that it's ambiguous. Well, I don't think that a statute, as this Court has recognized, has to address every conceivable possibility in order to be unambiguous. And this statute, I think, is unambiguous in that it refers to eligibility requirements that are by their nature, as defined in immigration law, individual to a specific alien. Ginsburg Wasn't there in the prior law a child domicile, a child was able to satisfy the 70-year requirement based on the parent's domicile, which was deemed to be the child's? Right. Respondents relied very heavily on three court of appeals cases that had interpreted the predecessor to this statute, former section 212C, to allow imputation of a parent's domicile to a child. Those courts relied on the common law rule that a child's domicile follows that of his parent. And applying that rule, they allowed children to rely on their parent's domicile in the United States to satisfy the 7-year lawful unrelinquished domicile requirement in that statute. Scalia I guess the child doesn't have any domicile except the parents, right? Children who run away from home do not acquire new domiciles, do they? Respondent Under this Court's decision in Holyfield, the common law rule is that the child's domicile is determined by that of his parents, regardless of where the child resides, in fact. When Congress repealed former section 212C and enacted the current cancellation of removal statute, it removed any reference to the word domicile, instead replacing the requirement of 7 years unrelinquished domicile with two durational requirements that are at issue in this case. Kennedy Is that change alone sufficient for us to say that this was a clear indication by the Congress of an intent or purpose to alter the imputation rule? Respondent I think if this Court is willing to presume, along with Respondents, that Congress would have been aware of these three court of appeals decisions that were issued, it should be noted, very late in the life of a provision that had existed in more or less the same form since the Immigration Act of 1917, then the Court also must presume that Congress was aware that the basis for those decisions was the common law definition of the term domicile, and that Congress meant what it did when it replaced with three eligibility criteria that are defined terms in the immigration law, and all of which refer to attributes that are individual to a specific alien. Ginsburg Does a child who is not emancipated have the capacity to independently establish a residence? Respondent How the INA defines the term residence is an actual principle dwelling in fact. So, yes, a child will dwell somewhere in fact and can do so independent of a parent. That is in marked contrast to the common law rule of domicile that this Court explained at length in its Holyfield decision that the courts of appeals applied in interpreting former section 212C. Kennedy Can a parent ask for a permanent residence status for a 5-year-old child? Respondent Yes, a parent can. Kennedy So if you have two cases, one in two 5-year-olds, one is in this case lives with the parent, but the application has not been granted or not been filed, and the other application has been granted, and they are treated differently. Respondent I think that's right, Justice Kennedy, and I think that that is a necessary corollary of the way the immigration system is constructed. As a general rule, LPR status and admission are criteria that are individual to a particular alien. To be sure, minor children of lawful permanent residence receive a high preference in the immigration visa system. But there is no rule that says that children automatically receive the same legal status as their lawful permanent resident parents. Sotomayor Assuming we don't accept Respondent's, what appears to be their argument, that being an LPR is not a requirement of the statute, if we assume that being an LPR is what triggers the availability for the Attorney General's exercise of discretion, how does that, how does the imputation rule harm the statute? The child has lived with the parents for 5 years, whether before or after, well, after it wouldn't be an issue, but before the grant of LPR status. How does that harm the purposes of the statute? I thought the idea of the statute was to give individuals who had ties to the United States an opportunity to stay. If a child's been with their parents for 5, 10, 15 years, what sense does it make to deprive them of the Attorney General's exercise of discretion merely because the administrative process has taken too long to give them something which they're going to get and which they've gotten? I think it's worth separating out two different components of the cancellation of removal decision. It is certainly true that it's an important criteria in determining whether or not an individual is entitled as a matter of discretion to cancellation of removal relief, how strong their ties are to the United States, what their family ties are and so on, but it has never been thought that particularly compelling reasons for the exercise of discretion can overcome the plain threshold requirements for eligibility for the exercise of discretion under 1229B. The difficulty with the imputation rule that the Ninth Circuit has recognized is that it undermines the plain requirements for those threshold determinations of eligibility, conferring an important benefit that goes along with long-time permanent resident status and long-time continuous residence after admission on individuals who not only did not receive the necessary formal authorization from immigration officials at the requisite time, may not even have been eligible to receive those authorizations. I think it's also worth noting that this statute is not the beginning and the end of discretion in the immigration system. It is always true, and it certainly was the case when Congress enacted this statute in 1996, that immigration officials have the discretion not to bring removal proceedings in the first place, to terminate removal proceedings once they have begun, to defer action on the execution of a removal order. And current Immigration and Customs Enforcement guidance makes clear that a minor receives particular consideration within the totality of the circumstances in determining whether or not prosecutorial discretion is something that should be exercised. Breyer. How does it work? Two legal permanent residents, a man and his wife, happen to show up in New York and they have a 6-month-old child. What's the legal — why doesn't the INS just take the child, ship him off? I mean, is it just discretion, or is there some rule of law or regulation that prevents that from happening? It will depend on the individual circumstances. Well, no, I've given you the hypothetical. I mean, there we are. Right. That's all you know. So Congress has taken some steps with respect to some subject set of aliens. The Respondent, for example, brings up the Life Act, and that is an example of where Congress has taken a step to — I'm not asking for that. I'm saying what in the law — it's all you know. All right? You know the hypothetical. One possible thing to say would be that child is actually — we are imputing that he's here for lawful permanent residence, too. Every circuit had had some kind of imputation rule, and moreover, there are other areas of law where I have found imputation rules in the immigration law, roughly. I have three or four cases on that. But they are not exactly comparable. Okay. So I just want to know what is it that prevents you from taking the child and shipping him off to China if we don't impute? Well, I think the answer is certainly not that we impute the admission of the child. I'm not asking that. You know the question. I just want your best effort to give an answer. Or I'm thinking that your answer is there is nothing. It's either imputation or nothing. Well, I think that that's— You don't want me to reach that conclusion. No. I think that that's incorrect. There are certain provisions of law that would allow for the child to be admitted, but on an independent basis from the parents. If the child is not admissible— If the supposition is that the parents, I think Justice Breyer's supposition was that both parents were LPRs, the likelihood of a 6-month-old child being born in the United States and therefore being a citizen would be rather large. Well, that's certainly right. It is also true that— No, no. That isn't my hypothetical. Right. In your hypothetical, the child is not born in the United States, right? If the child does not independently satisfy the criteria for admissibility, then the child has entered the United States illegally and remains here at the discretion of immigration officials. I suppose if they came with somebody else's 6-month-old child, they'd have to send that child back to China, too, wouldn't they? Well— Which would be very sad. But that would be the law, right? Well— Actually, they came from Italy in my hypothetical. I mean, I think that Martinez— They should not have sent him back to China, then. Why did they do that? I think Martinez Gutierrez's situation, I think, is a good example of this. He entered the United States illegally with his parents and remained here illegally until he was admitted as an LPR at the age of 19 as an adult. Until that time, there were no efforts to remove him from the United States, and I think that that's fairly typical. But that's not because his parents' admission or their lawful status in the United States were Martinez Gutierrez's. And there is no background principle in the law that would allow for such imputation of an individual formal authorization to remain in the country by immigration officials to be imputed from one to another. Rather, the immigration system sets up a system in which a lawful permanent resident parent can seek to petition for an immigration visa on behalf of a child and to facilitate that child's eventual adjustment to lawful permanent resident status, but it's not something that happens automatically. It's something that happens through a regular orderly process. Can you give me an example of an instance in which a child who's the child of two lawful permanent residents cannot get lawful permanent resident status for himself at the age of 8, but that he can at the age of 15? I mean, what commonly happens between that period that would make him eligible only when he's 15? Other than just as a matter of providing all the documents. That would make him ineligible at the age of 15? Well, you — the whole point here is that some children are given lawful permanent resident status and some are not. But I'm asking, does the passage of time, assuming two lawful permanent resident parents, ever make it so that a child who was formerly ineligible is now eligible — he was ineligible at 5, but he's eligible at 14? I mean, how does that work? I think the most common scenario is one in which a visa number doesn't become available until the child is 15. Oh, I know. A visa number. But nothing with respect to the child's real status other than his — where he is on the queue in the immigration department. That would be the most common scenario, is where the child is in the queue. And I think Respondents place a great deal of emphasis on the amount of time it takes for visa numbers to become available for both children and spouses of lawful permanent residents. But that has been a regular and acknowledged feature of the immigration system for decades. The Congress that enacted IRIRA in 1996 was well aware of the waiting times for these visa numbers. It had before it proposals for reducing the backlog, and it rejected those proposals. It enacted in the cancellation of removal statute two eligibility criteria that do not turn on potential eligibility for receiving LPR status or admission to the United States, but instead turn on actually having received that formal authorization from immigration officials. And I think that the best inference that we can draw from the statutory language is that Congress meant what it said. It attached special significance to that formal authorization, the formal exercise of authority by immigration officials, and not simply the potential for that exercise in the future. Kagan, you take a statute that doesn't say anything about imputation one way or the other, and you say that statute can still be unambiguous, and that would, I think, be true as a general matter. But now you add to that statute a history and a tradition and a practice in immigration law of imputation of various kinds. One is imputation of domicile in the way we talked about, but there are other imputations that occur throughout the field of immigration law. Some cut for the alien, some cut against the alien. In the world of that practice and tradition, aren't you at least in a sphere in which there is ambiguity, in which the agency essentially has discretion to decide whether it wants to impute in this way? I think the answer is no, Justice Kagan, because the other circumstances in which imputation had been allowed under the immigration laws differ in very important respects from the imputation. But none of them are textually commanded. Is that right? I mean, they are all situations in which the agency has decided that there are good reasons to impute various factors. Well, I don't think that the only reason that the agency has allowed for imputation is that there is good reason as a general policy matter. Counsel, I can't hear you very well. Would you crank up the thing or something? I'll try to speak more directly into the microphone. The reason the agency has allowed for imputation in other circumstances is with respect to certain inquiries that involve an inquiry into the alien's intent. So, for example, the Board has allowed for imputation under Section 1182K, which discretionary relief from the Attorney General when an immigrant did not know or could not have known that they were inadmissible. And the Board has said that for those purposes, the parent's knowledge of inadmissibility is imputed to the minor child. So, too, in the context of abandonment of LPR status, the Board has said — Excuse me. That first one usually cuts against the immigrant, I would assume. So if the parents knew, the child knows. And the child normally would not know, right? Well, that's correct. Yes. That's correct. But I think the critical point is that the agency has interpreted imputation of intent, of state of mind to be permissible, in part for the same reason that the common law rule about domicile formed, which is that— So you think that all the imputations that exist in immigration law are all a matter of imputing intent? I think that that's — all of the imputations that Respondents have pointed to concern state of mind type requirements. They don't concern formal authorizations by immigration officials. The Board, I think, has been very consistent, certainly in the context of cancellation of removal and not imputing the legal status of being an LPR or admission from parent to child. And it's difficult to see any other examples in which such imputation would be permissible in part because the background presumption of the immigration law is that those are both attributes that have to be individually achieved and the eligibility criteria have to be independently satisfied by each individual alien. So why is a parent's fraudulent conduct imputed to a child? There's no intent there. The child obviously doesn't have an intent or couldn't have an intent to commit a crime. So why is that imputed by the BIA? Other than that it's a holding against the immigrant, which your adversary points out is not a very favorable outlook for the agency, that it only imputes when it harms the immigrant. But putting that aside, there's no intent involved in the fraud. It's just a commission of an act. Well, I think that where the imputation has come in in the Board's analysis is with respect to the state of mind and not with respect to the objective context. What's the state of mind of committing an act, like a fraudulent act? It's a ‑‑ I think where this has come up is in the context of knowing that the alien is not in fact admissible to the United States is generally where it's come up. I'm not— A child doesn't commit a fraudulent act. But again, I think that the principle that the Board has applied is that because the child is presumed not capable of forming a requisite intent, the parent's intent is imputed to the child. But I think for present purposes the critical point is even in that context what is being imputed is not a formal status conferred on an individual alien by immigration officials or admission, a formal authorization to enter the country that is again conferred on an individual basis by immigration officials. I think Respondents can identify no circumstance, no precedent for that type of imputation. And it's one that would be inconsistent with the basic structure of the immigration  But they do think ‑‑ It's a little odd that the domicile is the more exacting of the two requirements, and yet the Congress allowed imputation in the domicile case but not in the residence case. It seems almost backward. Well, to be ‑‑ Congress enacts a more forgiving and less exacting standard but then takes away the imputation. Well, to be clear, Justice Kennedy, Congress did not supply a definition of the term domicile. And so the court of appeals opinions that Respondents are relying on followed the common law rule that says that a child's domicile follows that of his parents. But those courts applied that rule in very different ways. Two courts of appeals permitted children to benefit from the domicile of their parents in the United States even when they were not even physically present in the United States for the full 7-year period, whereas the Ninth Circuit, for its part, applied that rule only where the alien child had been ‑‑ had entered the United States lawfully with his parents, according to the Ninth Circuit, remained lawfully in the United States thereafter and simply had become an LPR outside of the full 7-year period. In crafting the current cancellation of removal statute, there's no reason to believe that Congress was aware of these three court of appeals opinions that were, again, decided very late in the life of former Section 212C. But even if it had been aware of those decisions, it also would have been aware that by using defined terms in the INA that are defined in a way that's individual to the particular alien, it was eliminating any reference to the common law rule. Unlike domicile, there is no rule that says that a child's LPR status follows that of its parents or that a child's admission follows that of its parents. Breyer I don't see how ‑‑ were you finished? O'Connell. Yes. Breyer I don't see how the ‑‑ you can read that Lepi-Gitron, that was one of the cases. It seems to me clearly imputes residence as well. They quote the earlier case from the circuit which said the 7 years of domicile have to come after their admission for permanent residence. And then the dissent says, hey, what about permanent residence? And what they say is this case is different because in that earlier case, the parents had never been admitted. He came after he was married. In this case, he's here after his parents were admitted. Now, I grant you, they didn't explicitly say this, but I don't see how they reached their conclusion without it. And then there's a different split in the circuits about the pro and con of tacking on periods, you know, before the domicile, after, et cetera. And that seems to be what Congress resolved. So I think if you're talking about what was the law, the law was you did impute with the ‑‑ you did impute for residence, and then Congress sort of doesn't deal with that and deals with a slightly different thing. Is that a fair reading, or what do you think? I don't think it is, but first I'd like to clarify that the Ninth Circuit had no reason to impute residence in Lepi-Gitron, in part because the alien in that case had resided, in fact, in the United States throughout the 7-year period. I think Respondents make the argument that Lepi-Gitron was, in fact, imputing LPR status as opposed to residence, in fact. But I think that that is an incorrect reading of the Ninth Circuit's decision as well, and that's for the following reason. All three courts of appeals that Respondents rely on dealt separately with the threshold requirement under former section 212C that the alien be a lawful permanent resident. None of those three courts permitted LPR status to be imputed from parent to child. So where there was an explicit requirement in the statute that LPR status be obtained by the alien seeking relief, the courts were very clear in requiring that the alien before them independently satisfy that requirement. In Lepi-Gitron, the Ninth Circuit acknowledged that under circuit precedent, it had held that domicile requires an intent to remain permanently in the United States lawfully, and said that that meant that the alien had to be in LPR status. Lepi-Gitron said that with respect to children, that intent to remain in the United States lawfully need not be in LPR status, so long as their parents were lawfully domiciled in the United States. If the Court has no further questions, I would like to reserve the balance of my time. Roberts. Thank you, counsel. Mr. Kennard. Mr. Chief Justice, and may it please the Court. Children present special problems under the immigration laws. And as discussed, both the courts and the agency in various contexts have resorted to imputation to cure those problems. And here the statute is silent as to imputation, and ambiguity arises, as applied to the special circumstance of children who were minors during the years in question. I don't know whether — I'm having trouble applying the concepts of unambiguous and ambiguous in this situation. As far as I can tell, this is something that the statute just doesn't deal with. And I don't know that you characterize that correctly as ambiguous. It's just kind of off the table. I think it's ambiguous as applied to this specific circumstance. And the ambiguity arises because the requirements for which there is imputation, status and residency, are matters that are not within the capacity or the control of a minor. A minor does not decide whether or when a parent will apply for LPR status for him or her. He does not control the maintenance of that status over a period of years. And he also does not control where he resides. Scalia. Well, can you give any example that the government says you can't of an instance where status is imputed? Not intent, but just status. Where the status that the parents have is automatically given to the child or, for that matter, automatically taken away from the child. Section 212C imputed status as the Ninth Circuit found. The reason was that the requirement there was not just for unrelinquished domicile, but lawful unrelinquished domicile. And therefore, they had to reach back to the period in which the parent was in LPR. Scalia. But there you are. What they are imputing is the intent to remain in the place, right? And that's intent. That's imputing intent. No, they also have to impute lawfulness, which meant that the parent had to be in LPR for that period or at least in some lawful status. And in each of the three instances, the parents were LPRs in the times in question. So there definitely was a foregoing rule of imputation of status. And I would submit that as well. Scalia. But the child would not have been lawfully there but for the imputation of lawfulness from the parents. That's right. Well, he would not have qualified for a waiver of removal. Mr. Cunard, I take it that the point you're making is the statute is ambiguous in the sense that its silence does not prevent the BIA from making this imputation if it wants to. But the BIA clearly doesn't want to. So where does that leave you? Well, I think if it is ambiguous, then the BIA actually has to exercise its discretion and grapple with that ambiguity. And that is one of the fundamental problems, is that this is a matter of labeling. Well, are you saying that the BIA needs to write an opinion that says, now we are doing Chevron's step 2 analysis? Is that what you're saying, that this is a matter of labeling? I don't think it's a matter of magic words. But what it has to do is actually grapple with and recognize the ambiguity, at least in the alternative, and then exercise its discretion to say, if this is a permissible construction of the Act and there is another permissible construction, which of the two better serve statutory purpose? But it doesn't have to grapple with everything that's not there. I mean, there are a lot of things that the statutes don't address. Agreed. It seems to me that they don't have to grapple with everything that's there. You just have to say this doesn't address it. So whoever is asking for the affirmative, which is you, loses. You're saying we think this law should allow, should provide for this, should extend it for this, and it's one thing to say, well, the statute is ambiguous. It talks about children in one category but not in another category, so the issue is there. We don't know what they meant. It's another thing if it's something that's totally not on the table. I mean, if you claim that the law required every minor to get $500 a year, you wouldn't say the statute was ambiguous about that. You'd say it doesn't have anything to do with it. Well, that's right, Your Honor. But I think the ambiguity arises here because the matters in question are ones not within the capacity or control of the minor, and that's been the traditional basis on which the BIA has looked for imputation. And when you take into account the statute, the statute is ambiguous about that. Ginsburg's argument, under your argument, an alien, a child, who never acquired LPR status in its own right, could get a cancellation of removal based on the parent's status. I don't think that's right. The Ninth Circuit did not address that, but I think the better reading of the statute, even if A-1 is somewhat ambiguous on that point, is that you have to be an LPR in order to seek cancellation. And then for these durational requirements and look back to status, there you do imputation. And the reason is twofold. One, section 212C, which it replaced, was limited to LPRs. The second is that there is a separate subsection, subsection B, of that same statute. I don't believe it's in the addenda provided to the courts. But it is cancellation of removal for certain nonpermanent resident aliens. And the critical distinction between the two, besides differences in criteria, is that that one authorizes adjustment of status as well as cancellation. Kennedy, if you're not an actual LPR, you need to have adjustment of status to not be in a legal limbo. Kennedy, what would happen if the child remains with the grandparents in Mexico and his parents are living in Los Angeles for 6 years until they can afford to take him? Is the parent's residence then imputed to the child so that when he moves to Los Angeles in year 7, he's deemed to have been there for 6 years? I think if there's a significant separation of that duration, I think there would be question about whether you have the significant relationship between parent and child to warrant imputation. But it is true that under former section 212C, at least in two of the cases, they imputed residency where the child was not actually resident. Breyer, you had an example in your brief. I thought you might – I thought it was an example of status rather than intent. The example that you gave, I took that way, tell me if I'm – is where an alien comes in and wants asylum. And then you can't get it if you were resettled in another country. And there are criteria – a country within a resettlement program. And then that seemed like a status, a residence. Were you resettled in the other country? Were you not? That's his status. And then that's imputed to the child. That's right. And the resettlement doesn't have any element of intent to it. So it's not true that everything turns upon intent. And I would also point out that under section A-1, it's not simply a requirement that there have been some grant of LPR status at some point in passage of five years. The statutory definition of lawfully admitted for permanent residence includes a requirement that the status has not changed. And that requires domiciliary intent, because the BIA has interpreted that phrase to mean that you can change your status by intent. And in fact, the Department of Homeland Security has defended against cancellation claims on the grounds that there was abandonment during the five-year period. So if you had a child coming forth, you would have to look, in certain circumstances at least, to the parent for intent of abandonment. So I think this is an element where there is direct continuity from section 212C. It makes eminent sense. And even if the BIA is deemed to have exercised its discretion here, I think its rule is patently unreasonable, and for a number of reasons. First, they are not able to advance a single policy reason that would be favorable to non-imputation. It destroys family unity and it forecloses eligibility for relief for even people like Mr. Martinez-Gutierrez, who has lived here since the age of five. And they're their This Court has dealt in a constitutional context with patently non-imputation parent-child relationships under the immigration law. Let's take Fiala v. Bell. There, the Court said, well, it tells us that for married parents it's this way, and for a child born out of wedlock, that relationship is something else. That could be considered quite arbitrary when the question is child left often. But the Court said, well, that's what the statute said. It made that distinction, and the Court upheld it. There are a number of cases where there is the statute does say parent-child relationship, this is imputed, that is not. The Court dealt with that in Miller and Lewin. Yes, Your Honor. And I think Congress has the latitude to be to draw arbitrary lines. I don't think the agency does if imputation is a permissible alternative. I think they have to give a reasoned basis for denying imputation when it was the prior rule. Roberts, isn't it why can't the BIA adopt, or why doesn't the background principle apply that you're not entitled to admission unless you make an affirmative case for it? You say, well, the government hasn't advanced any policy reason on the other side. Why isn't that the basic policy of the government? Well, I think they have to look to the actual statute and they have to give their own reasons, which I don't think they've done adequately as a matter of discretion. Here, this is a question of whether there is an adequate reason that they've come up with here and in their decisions that the prior word was domicile, and a child's domicile is the parents, and the word under the new statute is residence, and the child's residence is not necessarily the residence of the parent. That seems to me a perfectly valid reason. Well, I wouldn't say that's Chevron's step 2 discretion, but I think you also have to look to the fact that there was not only imputation of domicile, it required lawfulness, and in imputing domicile, they were also imputing residence. So it's true the word domicile. That may well be, but it's a different word. It's a different word. And the one word demands imputation, the other doesn't. So, I mean, I don't think you can say there's no rational basis given by the agency. Well, the rational basis comes in if there's ambiguity and they're determining why, if it's a permissible construction, why it should be rejected or not. One of the problems that I have is that I see the imputation as an equitable doctrine. Yes. And to me, that often means discretionary. Yes. If it is that, discretionary. I don't know what more the BIA has to say, then. I don't want to, because it renders lots of issues open, like what do we do with 1229bA2. Isn't that an end run on stopping this continuous 7-year statute or 10, whatever it is, if we're imputing a parent's residence or any of the things that you're – that the government said, the BIA said in rendering its decision? I mean, you can't force a court to impute – the BIA to impute. So what more do they have to say, then, we don't think it's consistent with the statute, even if it is ambiguous, to do this? Well, I would say the statute has an equitable purpose which allows imputation. I do not think there's discretion if imputation is permissible, unless there's a rational basis in serving the policies of the Act to deny imputation. And discretion does come in at the second phase, which is when the Attorney General determines whether or not the cancellation should be granted. So we should bear in mind that this is a statute strictly for eligibility simply to get to the phase where there's unreviewable discretion in the Attorney General to deny relief. And this is a once-in-a-lifetime remedy. You can only apply for cancellation once in your life. So I think in the special circumstance of children who were minors during the period, who could not have controlled their status, could not have controlled their residence, this is an eminently reasonable rule that's backed by Congress. Sotomayor, what's so reasonable about a child who lives with their grandparents outside the country? Why should their parents being in the U.S. be imputed to the benefit of that child? I certainly understand that in your client's situation, your client is the one who's been here since 5 years old. So. And BIA, I think it would be reasonable to draw a narrower rule and we could prevail under that rule. But I think the rationale is family unity, that even though there are periods of residence where there's a disjunction, the real reason is simply the operation of quotas. And there was a historical practice of allowing imputation of residence. Since you still have the family ties, I think imputation is permissible there. As long as you have the same thing. Kagan, I'm having trouble figuring out, is your view that non-immutation is just unreasonable per se, or is your view that they didn't explain non-imputation properly? There are alternative arguments. They certainly didn't explain it. I would also say it's unreasonable per se. One, because they have to deal with the fact of lack of custody and control. That's been the basis for their abandonment decisions.  The child has no intent whatsoever, so there's no common law principle for imputing mens rea, for example, knowledge of inadmissibility to a child. No basis for really imputing an intent to abandon when the child has none whatsoever. So at the very least, they have to explain that. And because the BIA has also not really taken into account the nature of these as simply eligibility rules. Thank you. Thank you, Mr. Kinnaird. Mr. Rothfeld. Thank you, Mr. Chief Justice, and may it please the Court. So far as subsection 2 of the provision that we're talking about this morning, which is the provision that concerns me in the Sawyers case, we think that the government's reading is simply not a sensible approach to the statute. And in that sense, our position is not that the statute is ambiguous. We think that the statutory context and the particular meaning of the words that Congress used require imputation in the circumstances of this case. I'll start with the statutory background, where I think the government sort of understates the nature of the prevailing settled rule that had applied. We usually like to start with the statutory language. Where is this issue addressed in this statute at all? Imputation as such, as has been said, is not directly addressed. But the words that Congress used, the word ''residence'' and the word in particular ''continuous residence'', are words that Congress would have thought carried along with it the concept of imputation. And the reason why that is so, I think it's necessary to start with a little bit of the background, both of the statute and how those words have been interpreted in prior usages that Congress would have been aware of when it used them in the statute. Under the prior relief provision here, section 212C, the old provision, the courts that the courts of appeals that had addressed it had uniformly applied an imputation rule. The government says it's three courts. Two of those courts are the Second and Ninth Circuits, the largest immigration circuits that decide two-thirds of the immigration cases in the country. So I think one can presume that Congress would have been aware of this rule. And the government concedes that Congress didn't change the language of 212C because it was dissatisfied with imputation. It had other purposes in mind altogether. And so what does the statute say about imputation of individuals' residence to grandparents? The rule, it says nothing directly about it. It says nothing about it. So would you say the statute is ambiguous on whether or not residence, legal permanent residence status should be imputed to grandparents? Well, I think there could be circumstances in which imputation is appropriate when the child is in the custody of the grandparent. But I'm focusing on parents because that's how the cases have been decided up to that point. The BIA itself had said prior to the enactment of this statute in the In Re In case, which I think is the case that Justice Breyer had referred to, it had said in so many words the residence of the parent is imputed to the child when the child is a minor. Congress would have been aware of that when it used the word residence in subsection 2. What do you do if the parent, the father is an LPR, the mother is not? Do we then impute to the child the father's status, the couple is not married? There are rules, common law rules, that the courts had applied in determining whose residence and whose domicile would be attributed to the child when the parents were not, didn't have joint custody. When the, if we're talking only about residence. They have joint custody, they live together, they're just not married. I think that, again, the courts have applied, if we're distinguishing for purposes of residence, and I'm not talking about the technical LPR status here when I'm using the term residence. I'm referring simply to kind of the general common law. Ginsburg. But I think it was agreed that LPR status would be necessary, at least Mr. Kennard said that. So we're only talking about the 5-year period and the 7-year period. The child would have to have LPR status. We agree ultimately to get relief, the child has to have LPR status. And certainly under subsection 1 of the provision, which is not at issue in the Sawyers case, that concerns 5 years of LPR status. Subsection 2, which is all that I'm concerned with in Sawyers, because that's the only element of the relief provision that he was deemed not to satisfy, concerns only the term residence, not LPR as such, simply continuous residence in the United States. And so the question of would Congress have thought that residence, continuous residence, is imputable from parent to child. I think it would have for two reasons. First of all, it would have believed that residence as a general matter is imputable. The BIA had said so itself in the Ng case. And as a domicile, which the government concedes was imputable, necessarily includes. Scalia Excuse me. Was residence at issue in that case? It was, indeed. It was a firm resettlement case. And the question was whether or not the alien had been a resident of Hong Kong. And the parents were residents, and the BIA said, well, the parent's residence is imputed to the child. Sotomayor Just for factual correction, the record doesn't tell us whether he was living with his mother. Mr. Soro was living with his mother. That's correct. And the answer to that is, is this a child living with a grandparent out of the country or not? The record does not reflect. We don't know if he was living in the U.S. in unlawful status up until the point he became an LPR at age 15. The record simply doesn't answer that question. Breyer You're saying, I just want to hear your whole argument here, you're saying they would have had, Congress, as a background, the Ng case where they imputed the Hong Kong residence, the fact that you were about to say that domicile necessarily includes residence, and is there something else? That's the principle. That's correct. But I can add to that a little bit, that in the Section 212 cases in which domicile was imputed, as the government recognizes, in at least two of those cases, the child was not in the United States for a portion of that time, and therefore necessarily those courts must have been imputing not only domicile, but residence. And that is necessarily the case, because residence is an element, a subset of domicile. Alito So if he came to the United States at 15 from Jamaica, he was a resident of the United States before he came here? Breyer As a legal matter, just as he would have been domiciled in the United States. Alito Would he be a resident of Jamaica, too, at that time? Breyer I think not. I think our common law would have regarded him as a resident of the United States. Alito And if his father was living in the U.K., would he be a resident of the U.K.? Breyer There might be legal rules that specify the physical presence is equivalent to residence for particular purposes, but as this Court held in Holyfield, as the  in which they have never set foot. The legal presumption is that a child is – takes the domicile of a parent, and residence is a necessary subset. As this Court said long ago, before any of these statutes were passed, the definition of domicile is that a child can be a resident without being a domiciliary. One can be a guest because the definition, as this Court said, of domicile is residence in a particular place accompanied by an intent to remain there indefinitely. And so you have to have both. You can't be a domicile without being a resident of the jurisdiction. Congress would have been aware of that, and when it used the term residence, it would have been aware of that as a general proposition, and it would have been aware that in the particular context of Section 212c, imputation rule for relief in the immigration laws, that use of the term resident carries with it imputation. I think that makes this, so far as we are concerned, that makes the use of the term continuous residence in subsection B unambiguous and requires imputation. Congress would have been aware of this. There is no reason to think that the government concedes Congress was not trying to change the imputation rule when it changed the terminology from domicile to resident. In fact, it's sort of perverse to say that Congress achieved that purpose because it was a – this was a liberalizing change. The reason that Congress – it's quite clear from the statutory background why Congress changed the language from 7 years unrelinquished lawful domicile in the old 212c to continuous residence after admission in any status in subsection B of the new statute was to broaden the availability of relief. Congress was confronted with a split in the circuits on the interpretation of the old rule as to whether or not one could achieve unrelinquished domicile, lawful unrelinquished domicile while not in an LPR status, because the BIA had taken the position that for – have lawful domicile, you have to lawfully intend to stay here permanently. You can't do that if you're not an LPR. And therefore, Congress, confronting the split in the circuits, because some courts had rejected the BIA's view, Congress said, okay, we're going to put in subsection A of the new statute a requirement of 5 years LPR status. If Congress had wanted to use the term resided in the ordinary sense of the word, they wanted to require that the alien actually have lived in the United States continuously for 7 years, what language would they have used? What language should they have used? For the child? Well, I think for an adult. If they wanted to demean the alien must have actually, that person, the one who committed the crime later, must actually have resided in the United States continuously for 7 years. I wish that they actually lived in the United States for 7 years. What language should they have used? For an adult, the language that they did use, because I think continuous residence carries with it the requirement that the person be physically present in the United States for 7 years. For a minor, if they wanted that to apply to everybody. I would think, given the context of which imputation was the settled rule, that Congress would have had to indicate affirmatively that imputation was impermissible. Just as if Congress uses the term domicile, as they did in the old section 212c, knowing the context in which, as a universal matter, the domicile of the parent is attributed to the child, one would expect that. Alitoson Domicile is a legal term. You don't go around and you meet somebody and say, where are you domiciled? You might not even say where do you reside, but it's closer to being ordinary language. Well, and reside can have different meanings in different contexts. There is a definition in the statute which the BIA itself has said does not apply to conditional uses of the term. So, you know, residence in its plainest sense, as this Court said in the Sabarucan case, which is where Congress derived the definition, which is now in the INA, that was kind of the plainest use of the term residence, you know, unadorned. And that was the statutory definition, which says without regard to intent. But when there is a conditional use, when it's continuous residence, as in subsection B of the statute, or permanent residence, necessarily one has to look at intent. And therefore, that statutory definition cannot apply. The BIA itself has said that expressly in the Wong case, which we discussed in our brief, that so far as permanent residence is concerned, the statutory definition has no application because necessarily one has to look to intent. And so this is sort of a secondary argument here, but insofar as intent is essential for imputation, which is what the government says, the government says the reason that the switch from domicile to residence matters is because domicile looks to intent and residence doesn't. But, in fact, continuous residence does, necessarily does look to intent because it's the intent to remain continuously or permanently. Kennedy, is there some advantage to giving parents an incentive to apply for early lawful permanent residence? Because under your view, parents wouldn't have to bother to apply for it at all. I'm wondering about the consequences of deciding in your favor. And the other one, quite distinct, is it seems to me that there probably would not be some floodgate of imputed residence cases. I, I, the only thing we're talking about here, of course, is a particular relief from removal provision. And so certainly the expectation that the child someday down the road may seek relief from removal if they do, if they become an LPR and do something wrong is not going to induce parents to delay. Scalia. Mr. Rothfeld, I'm curious, how often, this, this dispute here is simply about whether the Attorney General is permitted to cancel removal, right? That is correct. How often does, are, are applications for cancellation of removal granted? I mean, is it a common phenomenon? Or are we really talking here about just spinning it out longer so that the, so that the, the person who will ultimately be deported can stay here that much longer? I, I can't give you current statistics. I think this Court said, I believe in the St. Cyr case, that a fairly, a substantial 40 percent or so of the cases are granted. The Gutierrez case, in fact, the IJ would have granted removal and. I think it's as high as 40 percent.  But, but it is a significant percentage. And again, Gutierrez is an example of that. The IJ would have granted it, but for the, the rejection of the imputation rule further on in the, in the process. And I think this is actually kind of a significant point, which goes to what Congress would have had in mind. We are only talking about not entitlement relief. We are talking about entitlement to ask the Attorney General in the exercise of his unreliable discretion to grant relief to deserving immigrants who would otherwise be forced out of the country by the application of an inflexible rule. Roberts. I suppose one of the things he could take into account in exercising his discretion was whether we are actually dealing with a minor or, as I understand in this case, as someone who is quite a bit older. He, it is unreliable discretion. Yes, he could take anything into account. And certainly the nature of the family ties, the, the background of the immigrant, all of those things are taken into account. But the question, whether or not Congress, when it passed the statute, knowing how section 212C had been interpreted, the prospect that Congress meant to. Sotomayor Counsel, that's a very big assumption. I mean, yes, it's the two biggest circuits who have defined domicile and imputation, but it wasn't us, number one. And number two, going back to Justice Alito's question, they didn't adopt the same word, domicile. They changed it. So, and that's what the beyond. And that's what the IAEA was saying. Roberts Give you two responses to that, if I may, Justice Sotomayor. First, yes, I mean, it is a presumption that Congress is aware of judicial decisions, but I think that presumption. Sotomayor I can't be aware of all judicial decisions. Roberts No, but in this particular context, there is particular reason to think they were, because Congress, it is agreed, enacted this legislation to cure a conflict in the circuits involving the application of this cancellation provision. And so there would have been particular reason for Congress to be aware of what the courts have done. Roberts You said you had two points in which you do want to get your second out at the sentence.  I can rest at this point, Your Honor. Thank you so much.  Thank you. Ms. Kruger, you have four minutes remaining. Kruger Thank you. I would like to make three quick points. Kennedy The Respondent said that the BIA gave no policy reason, no policy justifications for its interpretation. Is that correct in your view? Kruger I don't think that that is correct. The BIA noted, to be clear, the BIA was, I think, heavily influenced by what it saw as the clear language of the statute, but it also noted that the imputation rule was inconsistent with a history of non-imputation of LPR status, an approach that treats LPR status as accorded to individual aliens. Scalia What do you respond to the point that lawfulness has been attributed, not just intent, but under the prior law, lawfulness was also attributed? Kruger I think this goes back to the answer I was giving to Justice Breyer earlier. Where former Section 212C had an explicit lawful status requirement, which is the status of being a lawful permanent resident, no court of appeals allowed imputation from parent to child. Their argument is a little bit more convoluted than that, is that because domicile, lawful unrelinquished domicile, was interpreted to mean the ability to form a lawful intent to remain permanently in the United States, and the Ninth Circuit said you could only form such an intent if you are a lawful permanent resident, that in L'Epi Gutron, the Ninth Circuit was therefore necessarily imputing LPR status from parent to child. I think the more straightforward way to read the Ninth Circuit's decision is that it was imputing the intent to remain permanently in the United States from parent to child, based in part on the parent's establishment of a domicile, and based on the common law rule that the child's domicile follows that of his parent's. Roberts, in response to Justice Kennedy's question about whether they gave a policy reason, your answer was that they, you know, followed the history. I'm not sure that's the same as a policy. Well, in addition to discussing the individual nature of LPR status, they also noted the consequence of the Ninth Circuit's imputation rule would be to permit a kind of end run around the substantive eligibility requirements for LPR status. So theoretically, you could have an individual minor alien who is not eligible, who is inadmissible for adjustment of status, who would nevertheless be accorded a substantial benefit of that status without regard to whether or not he could have received that status in fact. I want to address the case under the prior law. Under the under former section 212C. Yeah. Again, no court. No, it's not unthinkable. No court had imputed LPR status, the threshold requirement for relief under the predecessor statute from parent to child. So it wasn't the case that somebody who was actually ineligible for LPR status would nevertheless be eligible for waiver of removal under that provision. I just want to understand that argument, because they've conceded that you need the child needs their own LPR status before it triggers. Right. And I think that concession is important for the following reason. When Congress enacted the present cancellation of removal statute, it preserved that threshold requirement that you had to be in LPR in order to seek relief, but it added a durational requirement. You had to have obtained that status at least 5 years before you sought relief. There is no reason to think if there is no precedent for imputing LPR status in the first place that there would be precedent for imputing LPR status going back 5 years. One necessarily follows from the other. If I could, I'd like to address the other proposition that Respondent Sawyers makes, that courts were necessarily imputing residence as an element of domicile. That argument relies heavily on a 1967 regional commissioner decision dealing with firm resettlement. If you look at that decision, you'll see that the regional commissioner focused very intensely on the minor alien's particular actions, identity, documents that he received personally from the foreign country. His own schooling and residence. And the degree to which the regional commissioner rested on principles of imputation is entirely unclear. Thank you, counsel. The case is submitted.